UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────

ELASTIC WONDER, INC.,

                   Plaintiff,          13-CV-5603 (JGK)

      - against -             MEMORANDUM OPINION AND
                                     ORDER

IDIL DOGUOGLU POSEY,

                   Defendant.
────────────────────────────────

IDIL DOGUOGLU POSEY,

       Third Party Plaintiff,

      - against -

SPANDEX HOUSE, INC., ET AL.,

       Third Party Defendants.

────────────────────────────────

**JOHN G. KOELTL, District Judge:**

    This case concerns a dispute over the trademark of a legging brand named "Elastic Wonder." The original Complaint in this action was brought against the defendant and third party plaintiff Idil Doguoglu Posey by the plaintiff, Elastic Wonder, Inc. ("Elastic Wonder"). The Complaint alleged federal trademark infringement under the Lanham Act, 15 U.S.C. § 1125(a), and cybersquatting under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d), along with related state law claims. Posey, appearing pro se, brought counterclaims against Elastic Wonder and a Third Party Complaint against Spandex House

and Sabudh Chandra Nath. Each of the parties claimed the right to use the mark "ELASTIC WONDER" and claimed that the other party violated federal and state law by using that mark. Posey's surviving counterclaims and third party claims are substantially the same claims that had been brought against her by Elastic Wonder, with the addition of copyright infringement claims over the design of the leggings sold by Elastic Wonder.

Posey now moves pursuant to Fed. R. Civ. P. 56(a) for summary judgment in her favor dismissing all claims in the plaintiff's Complaint. The plaintiff and the third party defendants similarly move pursuant to Fed. R. Civ. P. 56(a) to dismiss Posey's claims against them. For reasons explained below, Posey's motion is denied. The plaintiff and the third party defendants' motion is granted.

## I.

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are

any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." <u>Gallo</u>, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323. The substantive law governing the case will identify those facts which are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)). Summary judgment is improper if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party. <u>See</u> <u>Chambers v. TRM Copy Ctrs. Corp.</u>, 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the non-moving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the

3

motion are not credible . . . ." <u>Ying Jing Gan v. City of New
York</u>, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted); <u>see
also Scotto v. Almenas</u>, 143 F.3d 105, 114-15 (2d Cir. 1998)
(collecting cases). If there are cross motions for summary
judgment, the Court must assess each of the motions and
determine whether either party is entitled to judgment as a
matter of law. <u>Admiral Indem. Co. v. Travelers Cas. & Sur. Co.
of America</u>, 881 F. Supp. 2d 570, 574 (S.D.N.Y. 2012); <u>see also</u>
<u>Staudinger+Franke GMBH v. Casey</u>, No. 13-CV-6124 (JGK), 2015 WL
3561409, at *1-2 (S.D.N.Y. June 8, 2015).

Where, as here, a pro se litigant is involved, although the
same standards for dismissal apply, a court should give the pro
se litigant special latitude in responding to a summary judgment
motion. <u>See McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir.
1999) (courts "read the pleadings of a pro se plaintiff
liberally and interpret them 'to raise the strongest arguments
that they suggest'" (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790
(2d Cir. 1994))). In particular, the pro se party must be given
express notice of the consequences of failing to respond
appropriately to a motion for summary judgment. <u>See McPherson</u>,
174 F.3d at 281; <u>Vital v. Interfaith Med. Ctr.</u>, 168 F.3d 615,
620-21 (2d Cir. 1999). "However, a pro se party's 'bald
assertion,' completely unsupported by evidence, is not
sufficient to overcome a motion for summary judgment." <u>Staten v.</u>

City of N. Y., No. 12-CV-3544 (ER), 2014 WL 3907926, at *4
(S.D.N.Y. Aug. 7, 2014) (citations and quotation marks omitted);
see also Heicklen v. Toala, No. 08-CV-2457 (JGK), 2010 WL
565426, at *2 (S.D.N.Y. Feb. 18, 2010), aff'd sub nom., Heicklen
v. Kelly, 409 F. App'x 457 (2d Cir. 2011).

There is no indication that Posey received express notice
of the requirements for responding to the summary judgment
motion or of the consequences of failing to oppose it. However,
in this case, Posey filed a response to the motion for summary
judgment against her, which included a twenty-five page Rule
56.1 counterstatement and more than 300 pages of exhibits.
Posey's Rule 56.1 counterstatement cited to Local Rule 56.1 and
vigorously attempted to dispute nearly every fact that was
purportedly undisputed with citations to the exhibits. Moreover,
Posey also moved for summary judgment against the plaintiff and
the third party defendants, and in her motion Posey cited to
Fed. R. Civ. P. 56 and Local Rule 56.1. These submissions by
Posey are sufficient to show that she knew the nature and
consequence of a summary judgment motion and the need to set
forth all available evidence demonstrating a genuine dispute
over material facts; express notice is therefore unnecessary.
See Chepak v. New York City Health & Hosps. Corp., No. 15-679,
2016 WL 1055780, at *1 (2d Cir. Mar. 17, 2016) (summary order)
(finding the record made clear that the pro se party understood

the nature of a summary judgment motion because the party submitted an opposition that cited to the district court's Local Rule 56.1, a statement of disputed facts, and over 300 pages of exhibits); M.B. # 11072-054 v. Reish, 119 F.3d 230, 231 (2d Cir. 1997) (per curiam).

II.

There is no genuine dispute regarding the following facts for purposes of these motions unless otherwise noted.[1]

Posey is a Swiss fashion designer who has been in the fashion industry for over twenty years. (Posey Decl. ¶ 2-3, ECF No. 182.) In December 2012, Posey allegedly came up with "Elastic Wonder" as the name for a new line of leggings. (Schurin Decl. Ex. G at 10-11.) Also in December 2012, while

---

[1] The respective parties have filed statements of undisputed facts as required by Local Rule 56.1(a) and have also filed responses to the opposing statements. Posey's statements, however, are filled with argumentative statements. Posey's failure to respond specifically or contest the facts set forth by the plaintiff and the third party defendants in their Rule 56.1 statement by citation to admissible evidence constitutes an admission of those facts, and those facts can be accepted as being undisputed. See Local Civil Rule 56.1(c); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998); United States v. All Right, Title and Interest in Real Prop. and Appurtenances, 77 F.3d 648, 657-58 (2d Cir. 1996); John Street Leasehold, LLC v. Capital Mgmt. Res., L.P., 154 F. Supp. 2d 527, 534 (S.D.N.Y. 2000), aff'd, 283 F.3d 73 (2d Cir. 2002). Nevertheless, the Court, consistent with the decision of the Second Circuit Court of Appeals in Giannullo v. City of N. Y., 322 F.3d 139, 140 (2d Cir. 2003), has conducted an independent review of the moving parties' allegedly undisputed facts that are cited below and has only included the facts that are adequately supported by the record in this case.

developing the Elastic Wonder line, Posey visited the third
party defendant Nath and discussed business with him. (Schurin
Decl. Ex. G at 12; Schurin Decl. Ex. V at 5-6.) During that
visit and in emails sent to Nath around the same time, Posey
proposed the idea of developing a legging line with Nath. (Pl.'s
R. 56.1 Stmt. ¶ 1; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 1;
Schurin Decl. Ex. G at 13-14.) In an email dated December 16,
2012, Posey proposed "Elastic Wonder" to Nath as the name for
this new legging line. (Pl.'s R. 56.1 Stmt. ¶ 1; Posey's Resp.
to Pl.'s R. 56.1 Stmt. ¶ 1; Schurin Decl. Ex. C.)

On December 27, 2012, Posey sent an email to Nath
requesting that Nath pay Posey $10,000 per month plus expenses
for 4-6 months for the new legging line business. (Pl.'s R. 56.1
Stmt. ¶ 3; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 3; Schurin
Decl. Ex. E.) In another email dated January 6, 2013, Posey
suggested to Nath that with regard to the new legging line,
"[Nath] will be the owner of the business, the domain, and
website," and that Posey would only be "freelancing" for Nath.
(Pl.'s R. 56.1 Stmt. ¶ 4; Posey's Resp. to Pl.'s R. 56.1 Stmt.
¶ 4; Schurin Decl. Ex. F.)

In early February 2013, Nath agreed to move forward and set
up this new business with Posey, and agreed to pay Posey a
maximum of $5000 per month for six months "as petty cash to buy
necessary materials to set up everything in return for receipts

7

in addition to the fabric and sample sewer needed." (Schurin
Decl. Ex. G at 15-16, 31-32; Pl.'s R. 56.1 Stmt. ¶ 6; Posey's
Resp. to Pl.'s R. 56.1 Stmt. ¶ 6.) During the period between
February and June 2013, Posey submitted receipts to Nath for
expenses incurred in relation to the Elastic Wonder business,
and received checks from Nath for about $5000 per month. (Pl.'s
R. 56.1 Stmt. ¶¶ 7-8; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶¶ 7-
8; Schurin Decl. Ex. G at 31-32; Ex. Y; Ex. Z.)

    Posey registered the domain name www.elasticwonder.com
("the website") for the new brand on December 12, 2012. (Schurin
Decl. Ex. G. at 11.) She wrote to Nath on February 6, 2013,
informing Nath that she had set up a general welcome page for
www.elasticwonder.com, but that there had been no shop yet on
that website and there had been no traffic. (Pl.'s R. 56.1 Stmt.
¶ 9; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 9; Schurin Decl. Ex.
H.) On March 18, 2013, Posey emailed Nath requesting Nath's
permission to go ahead with expenses for the website, including
expenses for the SSL (Secure Sockets Layer) certificate for the
website and an external hard drive to store the files relating
to the website. (Pl.'s R. 56.1 Stmt. ¶ 12; Posey's Resp. to
Pl.'s R. 56.1 Stmt. ¶ 12; Schurin Decl. Ex. J.) Nath reimbursed
Posey for these expenses. (Pl.'s R. 56.1 Stmt. ¶ 12; Posey's
Resp. to Pl.'s R. 56.1 Stmt. ¶ 12.)

In her February 6 email, Posey also informed Nath that she had reserved a Facebook page for Elastic Wonder. (Pl.'s R. 56.1 Stmt. ¶ 9; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 9; Schurin Decl. Ex. H.) On that Facebook page, Posey subsequently represented herself as the "creative director" for Elastic Wonder. (Pl.'s R. 56.1 Stmt. ¶ 5; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 5; Schurin Decl. Ex. X. at ¶ 14.)

On March 6, 2013, Elastic Wonder was incorporated with Nath being the sole owner. (Pl.'s R. 56.1 Stmt. ¶ 11; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 11; Schurin Decl. Ex. K.) Posey changed her email signature line to Elastic Wonder, Inc. after the incorporation of the company, alongside a link to the website www.elasticwonder.com. (Pl's Reply at 7, ECF No. 187; Schurin Decl. Ex. Q; Posey's Resp. to Pl.'s R. 56.1 Stmt. Ex. V. at 11-14.)

From early February to July, 2013, Posey submitted to Nath various legging and T-shirt designs that she suggested might be offered under the Elastic Wonder trademark, including one legging design that bears the name of Elastic Wonder. (Pl's Reply at 5, ECF No. 187; Schurin Decl. Ex. I; Posey's Resp. to Pl.'s R. 56.1 Stmt. Ex. H.) Posey alleges that the plaintiff and the third-party defendants infringed her copyright in the fitting of her legging designs by continuing to display and sell those leggings after her departure from the company. (Am. Third

9

Party Compl. ¶ 60, ECF No. 73; Schurin Decl. Ex. G at 53-54.)
The first documented sale of an item under the Elastic Wonder
brand occurred on June 28, 2013. (Posey's Resp. to Pl.'s R. 56.1
Stmt. Ex. N.)

The parties agree that the Elastic Wonder stylized logo was
first used in commerce on March 28, 2013, when Posey claims she
placed the logo on the website which was allegedly "already
live." (Pl.'s R. 56.1 Stmt. ¶ 18; Posey's Resp. to Pl.'s R. 56.1
Stmt. ¶ 18.) Posey registered that logo with U.S. Patent and
Trademark Office, and listed March 28, 2013 as the date for its
first use in commerce. (Pl.'s R. 56.1 Stmt. ¶ 18; Posey's Resp.
to Pl.'s R. 56.1 Stmt. ¶ 18; Schurin Decl. Ex. P.)

In early July, 2013, because of disagreement concerning
business operation and travel arrangements to the Magic Show in
Las Vegas, Posey ended her business relation with Nath. (Pl.'s
R. 56.1 Stmt. ¶¶ 23-25; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶¶
23-25; Posey's Amended Answer ¶ 20-21.) On July 24, 2013, Posey
sent an email to Nath and Spandex House, Inc. demanding that
Nath and the company stop using the Elastic Wonder name, logo,
and legging patterns. (Posey's Resp. to Pl.'s R. 56.1 Stmt. Ex.
X.) On October 9, 2013, the plaintiff decided to adopt a new
mark and phase out all use of the mark ELASTIC WONDER, and
changed its name from Elastic Wonder, Inc. to Walking Candy,

Inc. (Pl.'s R. 56.1 Stmt. ¶ 28; Posey's Resp. to Pl.'s R. 56.1
Stmt. ¶ 28; Schurin Decl. Ex. K.)

On or about August 12, 2013, Elastic Wonder filed this
action against Posey for federal trademark infringement, among
other claims. In its Complaint, Elastic Wonder alleges that it
owns the Elastic Wonder trademark, and that Posey was merely
assisting it in the venture. (Compl. ¶¶ 4-7.) On or about
October 4, 2013, Posey submitted an Amended Answer, alleged
counterclaims against Elastic Wonder, and moved to join Nath and
Spandex House as third party defendants. (Posey's Amended
Answer, ECF No. 18.) On or about February 24, 2014, Posey filed
a Third Party Complaint against Nath and Spandex House, and
filed her Amended Third Party Complaint on April 4, 2014. In her
Amended Third Party Complaint, Posey alleged trademark
infringement under the Lanham Act, 15 U.S.C. § 1125(a),
cybersquatting under the ACPA, 15 U.S.C. § 1125(d), and New York
state law claims of common law trademark infringement, unfair
competition, injury to business reputation, dilution, and breach
of contract. Posey also sought judgment declaring that she owned
the Elastic Wonder trademark.

On or about May 1, 2014, the third party defendants moved
to dismiss the Amended Third Party Complaint for failure to
state a claim under Federal Rule of Procedure 12(b)(6). By
Memorandum Opinion and Order dated January 22, 2015, the court

11

granted in part and denied in part that motion, dismissing Posey's claim for a declaratory judgment and her claim for breach of contract. Elastic Wonder, Inc. v. Posey, No. 13-CV-5603 (JGK), 2015 WL 273691, at *6 (S.D.N.Y. Jan. 22, 2015).

Posey filed a second Amended Third Party Complaint on April 20, 2015, essentially repeating her remaining claims while adding Walking Candy, Inc. as an additional third-party defendant. (Am. Third Party Compl., ECF No. 73.) After the third party defendants filed Answers to that Amended Complaint, Posey filed a Motion to Supplement Proceedings, by which she attempted to add various claims based on state and federal penal codes against the plaintiff and third party defendants. (Posey's Mot. to Supplement Pleadings, ECF No. 87.) By Order dated June 5, the Court requested that Posey advise the plaintiff whether she would dismiss the claims made under the New York Penal Law. (ECF No. 112.) In a letter dated June 11, 2015, Posey stated that she would voluntarily dismiss the claims under the New York Penal Law without prejudice. (Schurin Decl. Ex. B.)

The parties' respective motions for summary judgment followed.

### III.

The plaintiff and the third-party defendants move for summary judgment dismissing all the remaining claims Posey asserted against them. They argue that Elastic Wonder, and not

12

Posey, is the owner of the ELASTIC WONDER trademark because it was the first to use the mark in commerce. In the alternative, the moving parties argue that Nath and/or Elastic Wonder were joint owners of the ELASTIC WONDER trademark, and any use by these parties was authorized. In either case, they argue, Posey's trademark, cybersquatting, and related state law claims must be dismissed. They further contend that the Posey's copyright claim must also be dismissed because Posey does not have any copyright registration, and because Posey's claim in the "footprint" or "fit" of legging is not copyrightable. Posey did not file a memorandum of law in opposition, but she filed an argumentative Rule 56.1 statement in opposition. The Court has disregarded any inappropriate portion of Posey's submissions and considers the motion on its merits.

### A.

The moving parties argue that Elastic Wonder is the owner of the ELASTIC WONDER trademark because it was the first to use the mark in commerce. The parties do not dispute that ELASTIC WONDER is a distinctive mark. "Rights in a trademark are determined by the date of the mark's first use in commerce." Hana Financial, Inc. v. Hana Bank, 135 S. Ct. 907, 909 (2015); see also ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 147 (2d Cir. 2007). "It is therefore only the senior user of a mark that can bring a claim for trademark infringement . . . ." Hawaii-Pac.

13

Apparel Grp., Inc. v. Cleveland Browns Football Co. LLC, 418 F.
Supp. 2d 501, 506 (S.D.N.Y. 2006) (citing Genesee Brewing Co. v.
Stroh Brewing Co., 124 F.3d 137, 150 (2d Cir. 1997)). A party
may assert prior use when it "claims to have made the first use
of the mark to identify [its] goods or service and continues to
use the mark commercially." Dual Groupe, LLC v. Gans-Mex LLC,
932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013). The type of use must
be "sufficiently public to identify or distinguish the marked
goods in an appropriate segment of the public mind as those of
the adopter of the mark." Id. at 573-74 (quoting Lane Capital
Mgmt., Inc. v. Lane Capital Mgmt., Inc., 15 F. Supp. 2d 389, 396
(S.D.N.Y. 1998)).

Posey registered the stylized ELASTIC WONDER mark on
December 2, 2014 with the U.S. Patent and Trademark Office.
(Schurin Decl. Ex. P.) Ownership, however, is a product of use,
not of registration. Aini v. Sun Taiyang Co., 964 F. Supp. 762,
773 (S.D.N.Y. 1997), aff'd sub nom. Topiclear Beauty v. Sun
Taiyang Co., 159 F.3d 1348 (2d Cir. 1998). Posey's certificate
of trademark registration is prima facie evidence of (1) the
validity of the mark, (2) the registrant's ownership thereof,
and (3) the registrant's exclusive right to use the mark in
commerce on or in connection with the goods or services
specified in the certificate. 15 U.S.C. § 1057(b). However, the
registration is not incontestable, because the registration was

issued in 2014, less than five years ago while this case was pending. See 15 U.S.C. § 1065. Elastic Wonder may overcome the presumption that Posey owns the ELASTIC WONDER mark upon proof by a preponderance of the evidence that she does not. See Aini, 964 F. Supp. at 774.

Posey claims that she first used the ELASTIC WONDER mark on December 12, 2012, when she registered her domain www.elasticwonder.com. However, her email to Nath dated February 6, 2013 states that she had only set up a general welcome page for www.elasticwonder.com, but the website had no shop and no traffic. (Pl.'s R. 56.1 Stmt. ¶ 9; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 9; Schurin Decl. Ex. H.) Registration of a domain name, without more, "does not in itself constitute 'use' for purposes of acquiring trademark priority." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1051 (9th Cir. 1999); see also CourtAlert.com, Inc. v. e-Law, LLC, No. 12-CV-2473 (DAB), 2013 WL 4754819, at *2 (S.D.N.Y. Aug. 26, 2013). Without an offering of goods or services identified with the mark, a website that displays the ELASTIC WONDER mark and contains simply a welcome page is insufficient to establish that the mark was used to identify goods to the public.

The evidence shows that the first sale on the Elastic Wonder website occurred on June 28, 2013. (Posey's Resp. to Pl.'s R. 56.1 Stmt. Ex. N.) There is no dispute that the ELASTIC

15

WONDER mark was in use when the first sale was made on the
website.[2] Posey argues that she maintained the website for her
own benefit, and that the use of the ELASTIC WONDER mark on the
website did not confer any right on Elastic Wonder. That
contention is contrary to the evidence in the record. After the
incorporation of Elastic Wonder on March 8, 2013, Posey changed
her email signature block to include the name and address of
Elastic Wonder, Inc., with a link to the Elastic Wonder website.
(See, e.g., Schurin Decl. Exs. L, N, Q.) That signature block
manifests Posey's recognition that she made her communications
on behalf of Elastic Wonder, and that the website was operated
by the company. A consumer receiving an email with that
signature block would easily conclude that the source of the
goods bearing the ELASTIC WONDER mark sold on the website was
Elastic Wonder. Posey, on the other hand, has shown no evidence
how the website, during the relevant period, identified her as

---

[2] The parties agree that March 28, 2013 was the date the stylized
ELASTIC WONDER logo was first used in commerce. (Pl.'s R. 56.1
Stmt. ¶ 18; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 18; Schurin
Decl. Ex. P.) Posey explained that it was the date when she
placed the stylized mark on the website. However, the status of
the website's development between February and June is unclear.
For example, no evidence is in the record regarding the time
when an online shop was actually set up, or when items were
actually listed on the website. But because the parties agree
March 28 to be the date of the first use of the stylized mark in
commerce, they necessarily agree that ELASTIC WONDER mark was
also in use when the first sale was made in June. In any event,
it is of no practical difference whether the first use was in
March or June, because Posey was working for Elastic Wonder at
both times.

16

the source of the goods sold on the website. Her conclusory contention that she was the owner of the ELASTIC WONDER mark is therefore not supported by evidence and cannot defeat a motion for summary judgment. See Seward & Kissel v. Smith Wilson Co., 814 F. Supp. 370, 376-77 (S.D.N.Y. 1993).

Posey also claims that she acquired the ownership of the ELASTIC WONDER mark, including the word combination and the stylized logo, when she devised them. However, it is well established that "[t]he ordinary trademark has no necessary relation to invention or discovery." In re Trade-Mark Cases, 100 U.S. 82, 94 (1879). "Trademark law is concerned with protection of the symbols, elements or devices used to identify a product in the marketplace and to prevent confusion as to its source. It does not protect the content of a creative work of artistic expression as a trademark for itself." EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56, 63 (2d Cir. 2000). Merely inventing or designing the mark, therefore, does not confer on Posey the ownership of the mark.

There is no evidence in the record that supports Posey's alleged ownership of the ELASTIC WONDER mark, and Posey has not suggested that there is any other basis for a protected interest in the mark. The record supports that Elastic Wonder was the first to use the ELASTIC WONDER mark in commerce and acquired ownership of the mark. Posey's counterclaims and third-party

claims under the Lanham Act for trademark infringement and her
New York common law claim of trademark infringement against
Elastic Wonder are therefore dismissed. Posey's ACPA claim is
also dismissed because Posey is not the owner of the mark that
she alleged to have been cybersquatted. See 15 U.S.C. §
1125(d)(1)(A); New World Sols., Inc. v. NameMedia Inc., No. 11-
CV-2763 (KMK), 2015 WL 8958390, at *22 (S.D.N.Y. Dec. 15, 2015)
("A threshold requirement of the ACPA is that the plaintiff is
the owner of a mark." (citation and internal quotation marks
omitted)). Posey's New York common law claim of unfair
competition similarly fails because of her failure to establish
a prerequisite legal interest in the ELASTIC WONDER mark. See
Berni v. Int'l Gourmet Restaurants of Am., Inc., 838 F.2d 642,
648 (2d Cir. 1988) (The common law unfair competition claim
required "a colorable property or pecuniary interest."). Posey's
dilution claim under New York General Business Law section 360-l
is also dismissed, because to succeed on that claim Posey must
prove that she owns a distinctive mark. See New World, 2015 WL
8958390, at *23. Posey's failure to establish ownership to or
other protected interests in the ELASTIC WONDER mark requires
that each of these claims be dismissed. See MacKay v. Crews, No.
09-CV-2218 (JFB) (ARL), 2009 WL 5062119, at *6 (E.D.N.Y. Dec.
16, 2009).

It is unnecessary to reach the alternative contention that the moving parties were in a de facto partnership with Posey and thus were co-owners of the ELASTIC WONDER mark.

### B.

Posey's copyright claim fails because the footprint or fit of clothing is not copyrightable. Under the Copyright Act, "pictorial, graphic, and sculptural works" are generally eligible for copyright protection, subject to various requirements. 17 U.S.C. § 101; see also Chosun Int'l, Inc. v. Chrisha Creations, Ltd., 413 F.3d 324, 327 (2d Cir. 2005). The Act, however, protects "the design of a useful article," defined as "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information" or "[a]n article that is normally a part of a useful article," "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." 17 U.S.C. § 101; see Chosun, 413 F.3d at 327-30.

Clothes, including leggings, are useful articles for the purposes of the Copyright Act and thus are not typically copyrightable. See Whimsicality, Inc. v. Rubie's Costume Co., 891 F.2d 452, 455 (2d Cir. 1989); see also Fashion Originators Guild v. FTC, 114 F.2d 80, 84 (2d Cir. 1940), aff'd, 312 U.S.

19

457 (1941). However, as with all useful articles, elements of legging designs may be protected where they are "physically or conceptually" separable from the useful article. See 17 U.S.C. § 101; Kieselstein-Cord v. Accessories by Pearl, Inc., 632 F.2d 989, 993 (2d Cir. 1980). It is not enough that a useful article or one of its elements "fall[] within a traditional art form" or be "aesthetically satisfying and valuable"; "aesthetic or artistic features" alone do not make a design element physically or conceptually separable. Carol Barnhart Inc. v. Econ. Cover Corp., 773 F.2d 411, 418 (2d Cir. 1985).

A component of a useful article is physically separable if it "can actually be removed from the original item and separately sold, without adversely impacting the article's functionality." Chosun, 413 F.3d at 329. The fitting or the "footprint" of leggings, or any other kind of clothing, is only a way of arranging the components of the clothing, and plainly cannot be sold separately from the clothing.

Conceptual separability is more abstract and less readily understood. The Court of Appeals has held design elements to be conceptually separable when they "can be identified as reflecting the designer's artistic judgment exercised independently of functional influences" and do not "reflect a merger of aesthetic and functional considerations." Id. (citations and quotation marks omitted) (emphasis in original).

At times, it has asked whether an element's "ornamental aspect" was "primary" over a "subsidiary utilitarian function." Kieselstein-Cord, 632 F.2d at 993; see also Jovani Fashion, Ltd. v. Cinderella Divine, Inc., 808 F. Supp. 2d 542, 547-48 (S.D.N.Y. 2011), aff'd sub nom., Jovani Fashion, Ltd. v. Fiesta Fashions, 500 F. App'x 42 (2d Cir. 2012)

Under any one of these tests, the footprint or the fitting of leggings is not conceptually separable from the useful article. Here, as in Jovani Fashion, "the aesthetic merged with the functional to cover the body in a particularly attractive way." 500 F. App'x at 45. It is the functional purpose of covering the body in an attractive and comfortable way that motivates the designs of fittings of certain shapes, and the utilitarian function of the leggings as clothing is primary over the ornamental aspect. The designs with regard to the fitting of clothing are therefore not copyrightable, and Posey cannot assert any copyright in such elements of the leggings.

Moreover, the moving parties are also correct that Posey has not obtained or applied for a copyright registration for her purported copyright in the fitting of the leggings. "Copyright registration is a prerequisite to bringing a copyright suit." Senisi v. John Wiley & Sons, Inc., No. 13-CV-3314 (LTS)(AJP), 2015 WL 7736545, at *2 (S.D.N.Y. Nov. 30, 2015); see also 17 U.S.C. § 411(a); Psihoyos v. John Wiley & Sons, Inc., 748 F.3d

120, 125 (2d Cir. 2014). Posey's failure to satisfy this precondition of suit requires that her claim be dismissed. See Accurate Grading Quality Assur., Inc. v. Thorpe, No. 12-CV-1343 (ALC), 2013 WL 1234836, at *7 (S.D.N.Y. Mar. 26, 2013).

Therefore, Posey's claim for copyright infringements is **dismissed**.

### C.

On May 1, 2015, Posey filed a Motion to Supplement Proceedings. Although the filing was fashioned as a motion, it contains only the proposed Amended Complaint in its entirety. Because the filing was within the deadline for filing an amended third-party Complaint, the Court deems that filing as an amended third-party Complaint.

By this amended complaint, among other things, Posey joined various claims based on state and federal penal codes against the plaintiff and third party defendants. After the plaintiff and third party defendants raised this issue at a conference, Posey wrote to the parties that she was "removing those criminal claims without prejudice from [her] Supplement Pleadings in this civil action."[3] The parties have not filed a stipulation of dismissal, and the plaintiff and third party defendants have not filed a motion to dismiss regarding these claims.

---

[3] The letter made reference only to claims under New York Penal Law but made no mention of the claims under federal criminal statutes.

It is plain that the criminal statutes cited by Posey do not give rise to civil causes of actions. See Christian v. Town of Riga, 649 F. Supp. 2d 84, 91 (W.D.N.Y. 2009) (dismissing claims "premised on the state Penal Law, as a criminal charge cannot be prosecuted by a private person"); Kelly v. L.L. Cool J., 145 F.R.D. 32, 39 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994) ("[T]here is no private cause of action under the criminal provisions of the copyright law."). In the interest of judicial economy, the Court dismisses these claims under state and federal penal codes sua sponte. See Macebuh v. Gardella, 108 F.3d 329 (2d Cir. 1997) (affirming sua sponte dismissal of pro se civil action brought pursuant to 18 U.S.C. §§ 241 and 242) (unpublished); Lodrini v. Sebelius, No. 14-CV-3137 (SJF) (ARL), 2014 WL 2446073, at *4 (E.D.N.Y. May 29, 2014).

With this dismissal, all of Posey's counterclaims and third party claims are dismissed.

**IV.**

**A.**

Posey filed her purported motion for summary judgment as an exhibit to her motion for a Local Rule 37.2 pre-motion conference. It failed to follow any of the Rules for a motion for summary judgment. The motion is not supported by an affidavit or a Memorandum of Law. It included a purported Rule 56.1 statement of material facts which is filled with conclusory

23

factual allegations. Posey's pro se status does not excuse her failure to follow procedural rules. Nevertheless, the Court has considered the motion on its merits. <u>See, e.g.</u>, <u>Howard v. City of N. Y.</u>, 302 F. Supp. 2d 256, 259-60 (S.D.N.Y. 2004), <u>aff'd</u>, 363 F. App'x 805 (2d Cir. 2010).

### B.

Liberally interpreted, Posey's submissions raise two arguments for summary judgment. First, Posey contends that there is no genuine dispute that Posey had no enforceable agreement with Nath or any of his companies. She argues that the plaintiff does not have a valid trademark because she was the owner of the ELASTIC WONDER trademark and it would require an enforceable contract for her to transfer the trademark to Nath or Elastic Wonder. Therefore, Posey contends, the plaintiff's claims should be dismissed because the plaintiff does not have a valid mark.

The alleged fact that there was no enforceable agreement between the parties is plainly disputed. (<u>See</u> Posey's R. 56.1 Stmt. ¶ 17; Pl.'s Resp. to Pl.'s R. 56.1 Stmt. ¶ 17.) Evidence shows that Posey solicited Nath's participation in the Elastic Wonder legging line, requesting that Nath pay Posey $10,000 per month plus expenses for 4-6 months. (Pl.'s R. 56.1 Stmt. ¶ 3; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 2; Schurin Decl. Ex. E.) Nath agreed in February, 2014 to participate in the business and to reimburse Posey for a maximum of $5,000 per month. (Pl.'s R.

24

56.1 Stmt. ¶ 6; Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 6;
Schurin Decl. Ex. G at 15-16, 31-32.) Posey received
reimbursement from Nath for certain expenses that she incurred
for the Elastic Wonder legging brand and website, (Schurin Decl.
Exs. G at 31-32, Y, Z,) and wrote to Nath with recommendations
on various matters concerning the Elastic Wonder business.
(Schurin Decl. Ex. I; Posey's Resp. to Pl.'s R. 56.1 Stmt. Ex.
H.) Under these facts and with inferences drawn in favor of the
non-moving parties, Posey has not established that there was no
agreement among the parties.

Moreover, Elastic Wonder contends that it acquired the
trademark not through any agreement with Posey to transfer the
mark, but because Elastic Wonder was the first to use the
trademark. As explained above, the evidence in the record shows
that Elastic Wonder was the first to use the ELASTIC WONDER mark
in commerce, and Posey was working on behalf of the plaintiff at
the time. It is unnecessary for the plaintiff to have a contract
that transfers trademark right from Posey to the plaintiff. The
fact that there was no enforceable contract, even if true, is
therefore immaterial.

Posey also contends that by changing the corporate name
from Elastic Wonder to Walking Candy, the plaintiff has
abandoned the trademark ELASTIC WONDER. "[A]bandonment, being a
forfeiture of a property interest, should be strictly proved."

*Saratoga Vichy Spring Co., Inc. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980). "To determine that a trademark or trade name is abandoned, two elements must be satisfied: non-use of the name by the legal owner and no intent by that person or entity to resume use in the reasonably foreseeable future." Stetson v. Howard D. Wolf & Assocs., 955 F.2d 847, 850 (2d Cir. 1992) (citation omitted).

Posey argues that the plaintiff ceased its use of the ELASTIC WONDER mark after the commencement of this lawsuit. But the record shows that the plaintiff used the ELASTIC WONDER mark during the relevant period prior to the commencement of this lawsuit. (Posey's Resp. to Pl.'s R. 56.1 Stmt. ¶ 26.) The plaintiff not only maintained a website that used the ELASTIC WONDER mark, but also operated a physical shop that displays a banner bearing ELASTIC WONDER mark. (Id. Exs. P, AA.) Posey has failed to provide any evidence that the plaintiff did not use the ELASTIC WONDER name and trademarks during the relevant period before the commencement of litigation. Her argument is therefore unavailing.

Posey also argues that the plaintiff has failed to transfer its alleged ownership in the mark to Walking Candy, Inc. after the plaintiff changed its corporate name. Under New York law, a corporation may amend its certificate of incorporation to change its corporate name. N.Y. Bus. Corp. Law § 801. A corporation

26

that changes its name remains the same continuous corporate entity, and there was no need for any formal transfer of the trademark rights by the plaintiff. Dep't of Justice, F.B.I. v. Calspan Corp., 578 F.2d 295, 300 (C.C.P.A. 1978); see also Fehr Bros. v. Scheinman, 509 N.Y.S.2d 304, 309 (App. Div. 1986).

Posey's motion is therefore denied. However, the plaintiff has previously indicated that it intends voluntarily to dismiss all of its claims against Posey if the counterclaims and third-party claims are dismissed.

## CONCLUSION

To the extent not specifically addressed above, any remaining arguments are either moot or without merit. The plaintiff and third-party defendants' motion is granted. All of Posey's counterclaims and third-party claims are dismissed. Posey's motion for summary judgment is denied. The Clerk is directed to close all pending motions.

**SO ORDERED.**

**Dated:**      **New York, New York**
              **April 12, 2016**              _____/s/_____
                                              **John G. Koeltl**
                                       **United States District Judge**